Filed 7/29/16  In re W.R. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re W.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>v.<br><br>W.R.,<br><br>            Defendant and Appellant. | A146741<br><br>(San Francisco County<br>Super. Ct. No. JW-14-6119) |

**INTRODUCTION**

Minor W.R. appeals from the juvenile court's order denying his motion to modify the court's earlier order assigning him to out-of-home placement.  This is minor's second appeal from such an order.  In minor's earlier appeal, on January 6, 2016, we found the juvenile court did not abuse its discretion, substantial evidence supported the court's finding that home placement is contrary to appellant's rehabilitation and to public safety, and we affirmed the juvenile court's orders.  (*In re W.R.* (Jan. 6, 2016, A144659/A145118 [nonpub. opn.].)[1]  That opinion is final and constitutes the law of the

---

[1] On our own motion, we take judicial notice of this court's files and opinion in the consolidated appeal of *In re W.R.*, *supra*, A144659/A145118.  (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)  By order dated January 27, 2016, we previously granted minor's motion to take judicial notice of certain reporter's transcripts, subject to a determination of relevance.

case. We find no changed circumstances warranting a modification of the court's order and once again affirm.

## BACKGROUND PROCEDURAL AND HISTORICAL FACTS

As the result of a series of wardship petitions resulting in the minor's admission of four misdemeanor offenses[2] and two probation violations for truancy in San Mateo and San Francisco Counties, the juvenile court in San Francisco ordered out-of-home placement on January 23, 2015. Minor faces a maximum term of commitment of two years.

### Facts Relating to Disposition

Minor moved from mother's home in San Mateo to father's home in San Francisco by mutual parental agreement on January 8, 2014. He was enrolled in a San Francisco public high school. However, as the probation officer reported at the time, minor's "behavior and attendance [were] problematic" in that "[h]e was frequently tardy or absent without excuse, and had over 12 referrals and numerous suspensions, for his poor behavior." In addition, minor tested positive for marijuana on March 4, 2014, was found in possession of 1.5 grams of methamphetamine on April 21, 2014, and defaced a wall at the San Mateo County Youth Services Center with his moniker, "Chops," on November 1 and December 3, 2014.

However, during that time period, minor's living situation was chaotic. According to the alternative dispositional report, in July 2014, minor's father, father's fiancée, and their two young children were evicted from their home in San Francisco. Father found a place in to live in Alameda County, but the landlord would only permit four persons (father, fiancée and the two children) to occupy it. Therefore, minor's parents allowed

---

[2] The four misdemeanors are possession of a dirk or dagger (Pen. Code, § 21310); two separate instances of vandalism (Pen. Code, § 594, subd. (b)(2)(A); and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). (*In re W.R.*, *supra*, A144659/A145118, pp. *2–*3.)

him "to temporarily live with his uncle and grandmother, with whom he has very close relationships, until [father] was able to secure housing in San Francisco" for all them, which father did in early December 2014.

According to the probation report, "minor's grandmother reported he was out of control and would not attend school." The probation report recommended out-of-home placement in Log Cabin Ranch School.

Social worker Erin Brown's alternative dispositional report recommended placement with the minor's father, under an "intensive, wraparound service plan," including GPS ankle monitoring, daily curfew calls by and frequent face-to-face meetings with a case manager, intensive anger management program through AIIM Higher, substance abuse treatment through Asian American Recovery Services, school placement at Civic Center, individual therapy for depression and anxiety through the ISIS Center and on-site during the school day at the Civil Center Wellness Center, family therapy through the ISIS Center, and mentoring through the Center on Juvenile and Criminal Justice. Ms. Brown acknowledged that execution of this plan would require compliance by the minor and referrals from the probation department.

At the disposition hearing on January 23, 2015, the court stated it had reviewed the probation report and the alternative dispositional report prepared on minor's behalf by Ms. Brown, whose investigative work was valued by the court. As discussed in our prior opinion, the juvenile court rejected placement with father because the minor had already been placed with him and had done poorly: he reoffended and skipped school. In addition, the court deemed father a bad influence on his son.

Minor's attorney suggested the program at Thunder Road as an alternative placement to Log Cabin. The court agreed and ordered an interview with Thunder Road. Minor's attorney represented that minor "is willing to go to a program like Thunder Road." The court ordered that minor could be allowed to return home on a trial basis, not to exceed 30 days, upon completion of the program in an assigned facility.

***Facts Relating to First Motion to Modify Disposition***

The record shows that as of April 1, 2015, minor had been rejected by Aaron's Boys Home, Excell Center, Mary's Help, Quality Group Homes and Thunder Road. In addition, 33rd Avenue Shelter Group Home, Courage to Change and Sequel were still pending review of the file. The placements "reported having concerns of the minor having severe treatment issues, denial of substance use and gang affiliation and his disinterest in the programs." As of April 14, 2015, minor had been accepted by Courage to Change group home; however, when a representative of the home arrived to pick up the minor on April 7, 2015, he refused to go. The other group homes rejected the minor.

On April 20, 2015, the minor moved to modify the order imposing out-of-home placement. He alleged his uncle's willingness to receive him in his home and supervise him, his rejection by six group homes, and "a 3-month delay in releasing the minor to a placement" as changed circumstances pursuant to Welfare and Institutions Code section 778. The probation department noted that placement with the uncle had already been tried and found unsuccessful: "Prior to the minor's arrest, he was living with his paternal grandmother and paternal uncle in San Francisco and according to reports, the minor was out of control. He would not attend school, stay out passed (*sic*) curfew, refused to participate in Court ordered programs, or meet with his Probation Officer." The court denied his motion on April 30, 2015.

This court concluded: "[Minor] was not placed during the time after disposition because he demonstrated he was unwilling to commit to the prerequisites for placement in appropriate programs. It continued to be the court's impression, based on this record, the minor needed 'more structure than he can get in the community right now.' It is also apparent that while in the structure of Juvenile Hall during this same period, appellant was improving, according to his teachers. The court believed placement with an uncle would stifle that improvement." (*In re W.R.*, *supra*, A144659/A145118, p. *8.)

4

"The court appropriately denied the modification." (*In re W.R.*, *supra*, A144659/A145118, p. *7.)[3]

*Facts Relating to the Second Modification Motion*

Minor was placed at Courage for Change on May 4, 2015, and left that placement without permission on May 13, 2015. He was eventually detained on June 17. In July, he was rejected for placement by R-House and Green Acres, and rejected a second time by Mary's Help. On August 21, 2015, Woodward Academy in Iowa initially accepted him. However, after reviewing a psychological evaluation report authored by Dr. Caroline Salvador-Moses, Psy.D., dated September 17, 2015, Woodward withdrew its acceptance. Clarinda also declined to take the minor, and the probation department made new referrals to George Junior, St. Vincent's, and other Sequel Programs.

On September 23, 2015, minor filed his second motion to modify the court's out-of-home placement order (Welf. & Inst. Code, § 778) on the grounds that (1) given the length of custodial time the minor has spent awaiting placement,[4] he should be immediately released to his uncle, M.R., pending placement; and (2) "[g]iven the findings and opinions by Dr. Salvador-Moses, and the availability of California programs and relative placement, the Court should vacate any out of state commitment . . . in favor of pursuing appropriate and available in-state opportunities not previously considered by either Probation or the Court." Dr. Salvador-Moses' report was attached as Exhibit A.

Dr. Salvador-Moses was hired by the minor's attorney to "assess [W.R.]'s current emotional functioning and identify recommendations including placement, treatment, and services." Minor, then age 15, and minor's family were fearful and frustrated about the current recommendation to place the minor out of state, when minor's uncle and

---

[3] Although our prior opinion is unpublished, it may be cited under the doctrine of law of the case. (Cal. Rules of Court, rule 8.1115(b)(1).)

[4] According to the probation department, as of September 30, 2015, the minor had served 277 days in San Francisco County's juvenile hall.

5

grandmother, with whom the minor was closely bonded, wished for the minor to be placed in their home. Dr. Salvador-Moses interviewed the minor and his uncle and grandmother, administered several tests, and reviewed previous intelligence, cognitive and achievement testing by San Francisco Unified School District, as well as numerous medical and court records. These records indicate the minor met developmental milestones normally, engaged in incidents of self-harm while in custody, did poorly in school, and met the criteria for special education eligibility based on average cognitive scores with attentional deficits and weaknesses in auditory and verbal processing.

Records also indicated the minor has "significant psychological needs." He had a history of suicidal ideation. A school district psychoeducational evaluation from April 2015 gave the minor elevated scores for "inattention, hyperactivity, impulsivity, learning problems, aggression [and] clinically significant externalizing problems . . . ." School records also noted mood swings, rule-breaking and impulsive behaviors. Medical records documented treatment with drugs for depression, sleep, and attention deficient hyperactivity disorder (ADHD). In June 2015, when the minor was placed in custody after running away from a group home and enduring a period of homelessness, he "admitted to having used substances including alcohol, cocaine, marijuana and Xanax" and "presented with auditory (hearing voices including voices telling him to kill himself), visual (seeing flashes) and tactile hallucinations (sensations of bugs crawling on his skin)." These symptoms were attributed at the time to cocaine withdrawal.

Minor was strip-searched at juvenile hall, making him very anxious and afraid of being sexually assaulted. He disclosed to Dr. Salvador-Moses the incident triggered fragmentary memories of having been molested at a very young age. Minor also disclosed that he continued to have auditory hallucinations and sometimes thinks "somebody may be sending him messages telepathically." Minor described feeling helpless and apathetic about his continued confinement in juvenile hall. He felt he was being picked on by some of his peers and mistreated by staff.

6

The results of the tests administered by Dr. Salvador-Moses disclosed the minor showed elevated anxiety, depression and anger levels. She diagnosed him with (1) major depressive disorder, recurrent and severe with psychotic features; (2) posttraumatic stress disorder (PTSD); (3) unspecified disruptive impulse control and conduct disorder; (4) ADHD, combined type; and (5) specific learning disorder (SLD). Dr. Salvador-Moses opined the minor presented a risk of danger to himself, but not to others. She acknowledged the minor had several risk factors for reoffending, but believed he would be motivated to improve his behaviors if given the chance to return to his family, and that with "therapeutic interventions, support, guidance and close monitoring, his risk for reoffending can be minimized."

Dr. Salvador-Moses did not recommend returning the minor to his father, but did consider placement with his uncle and grandmother appropriate. Dr. Salvador-Moses considered placement in a dual-diagnosis group home in the Bay Area "ideal." She particularly recommended the program at a dual diagnosis facility called On Common Ground. Dr. Moses also recommended intensive individual therapy, intensive case management services if the minor to were to be placed with his uncle, continued monitoring of the minor's suicide risk, continued psychiatric medication evaluation and monitoring for side effects, family therapy, aggression replacement therapy, substance abuse treatment, special education services, and a gang prevention program.

A contested hearing on the minor's motion was held on September 30, 2015. The judge was in receipt of letters from Reverend Richardson and Ms. Mercurio, the minor's English teacher at juvenile hall, and had "carefully read the motion, the opposition filed by the District Attorney, the opposition filed by the Juvenile Probation Department, and the transcript of the last hearing before Judge Breall."[5] The court heard from the minor's

_____

[5] On October 1, 2015, the court ordered a psychological evaluation for placement purposes at the probation officer's request. That report was not received until October 15, 2015, well after the hearing at issue here. We therefore do not consider it.

7

uncle, M.R. Minor's uncle offered to change his work shift so that he and his wife could "keep an eye on [W.R.], drop him off at school in day time, pick him up in the afternoon." Minor's counsel argued that releasing the minor to his uncle "would actually allow the Minor to enroll in a special education program in San Francisco to determine whether a nonpublic school would be more appropriate. That can't occur in Juvenile Hall. . . . [P]art of what he needs is one-on-one and constant pullouts. It's just not feasible in Juvenile Hall. . . . [¶] . . . [¶] . . . Substance abuse counseling can be coordinated through Kaiser, . . . as well as through Reverend Richardson. . . . [¶] . . . [¶] . . . [T]he District Attorney . . . and probation [are] . . . not addressing Exhibit A the psychological evaluation of those recommendations. There are services available in the community. And after 500 days languishing in Juvenile Hall, I don't think that's appropriate either. He's becoming more psychologically traumatized . . . ."

Judge Hitchens expressed regret that the minor had remained in custody for so long, but noted that the minor "didn't want Log Cabin Ranch." After reiterating she had read all the papers very carefully, and knew Judge Breall had also considered them very carefully, she denied the motion "at this time." She stated: "I think he needs . . . much higher care."

## DISCUSSION

Under Welfare and Institutions Code section 778, the minor may seek modification of an order upon "grounds of change of circumstance or new evidence." (Welf. & Inst. Code, § 778, subd. (a)(1).) "[I]n passing upon the matters presented pursuant to a petition under said section the trial court must necessarily consider the matters which formed the basis of the order previously made in order to ascertain whether there has been a 'change of circumstance' or 'new evidence' warranting a change, modification or setting aside of such previous order. . . . [T]he circumstances existing when the order sought to be modified or terminated was made are considered in order to determine whether there has been a substantial change in the circumstances warranting a

8

modification or termination.  [Citations.]  . . . .  [I]t is well established that the modification or termination rests in the sound discretion of the trial court and, in the absence of a clear showing of abuse of discretion, an appellate court is not free to interfere with the trial court's order." (*In re Corey* (1964) 230 Cal.App.2d 813, 831–832.)

The change of circumstances proffered here were (1) the minor's continued detention while awaiting placement; (2) the deleterious effect of continued detention on minor's fragile psychological state given his diagnoses of major depression, PTSD, ADHD, SLD and unspecified disruptive impulse control and conduct disorders; and (3) the existence of untried in-state placements:  paternal uncle's home, pending placement, or Our Common Ground in San Mateo, Edgewood in San Francisco (day or residential) and St. Vincent's in Marin County (day or residential).  In our view, the court did not abuse its discretion in finding these factors did not dictate a change in the order for an out-of-home placement.

Uncle's home was not a new, untried placement.  The minor previously lived for six months in 2014 with uncle and grandmother and had failed to reform.  During this period, grandmother reported to the probation department that the minor was "out of control" and truant.  Furthermore, placement in uncle's home had been the basis of minor's *first* modification motion.[6]  After consideration of all that had occurred previously, the juvenile court found no basis for reversing itself on this point.  Neither do we.  Uncle is no doubt well-meaning, but as the juvenile court succinctly stated, minor needs much higher care.  The issues addressed in Dr. Salvador-Moses' report referenced above reflect substantial needs for this minor; a focus beyond an effort to assure the

---

[6] At oral argument, appellate counsel confirmed this same uncle was the subject of both modification motions.

9

minor attends school and returns home afterwards.  We agree with the juvenile court we are beyond attempting again what had been unsuccessful roughly two years before.

Substantial evidence supports the probation department's assertion that "[e]fforts to place the minor have been ongoing . . . since his commitment to out of home placement.  However[,] placing the minor has been quite challenging but for not a lack of effort."  On this record, the probation department's efforts to find a suitable placement for minor have been nothing short of Herculean.  Such efforts take time, especially when the minor presents with such a complicated constellation of problems.  Minor is, understandably, very depressed about being in juvenile hall for such an extended period.  But minor's educational and psychological problems predate his current detention in San Francisco.  Minor was first assessed for special education services when he was five years old.  He was diagnosed with SLD in the sixth grade.  On December 3, 2013, W.R. was suspended from school for possession of marijuana.  He then threatened suicide in a text to his mother and was subsequently hospitalized.

While at juvenile hall before he was placed at Courage for Change, the minor had been taking the medications Tenex (for impulsivity and hyperactivity) and Remeron (for depression and hypervigilance.)  After leaving the Courage to Change program without permission on May 13, 2015, he was homeless for several weeks, staying on the streets and using controlled substances.  He was detained on June 17, 2015, after he presented himself at Edgewood.  At that time, he was experiencing auditory, visual and tactile hallucinations.  He was prescribed Clonazepam for a time and received other interventions.

By contrast, since his return to custody, and presumably after a period of restabilization on his medications at juvenile hall, minor's English teacher was able to report that the minor "has shown improvement in both his academics and his emotional maturity."  On this record, the trial court's conclusion that an out-of-home placement is needed to help the minor cope with his issues is not an abuse of discretion, even if

10

juvenile hall detention has, on some level, exacerbated his problems. The solution is finding a suitable out-of-home placement.

As for consideration of other untried, out-of-home placements, minor's attorney admitted at the hearing that the program specifically recommended by Dr. Salvador-Moses, Our Common Ground, had "lost county funding for dealing with under 18 year olds." St. Vincent's had already been contacted.

If counsel's purpose in filing a second modification motion was to forestall an out-of-state placement for minor, counsel appears to have succeeded. In our view, the juvenile court was optimistic an in-state program could be found, and especially viewed contact with the George Junior program favorably. We see no abuse of discretion in the court's commitment to finding an out-of-home placement for this minor.

## DISPOSITION

The juvenile court's order denying minor's modification motion is affirmed.


_____
DONDERO, J.


We concur:


_____
MARGULIES, Acting P. J.


_____
BANKE, J.


11